IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMUEL L. EAKMAN, JR., )
)
                Petitioner, ) C.A. No. 05-1388
)
v. )
) Magistrate Judge Lisa Pupo Lenihan
BUREAU OF PRISONS, et al. )
)
                Respondents. )

## OPINION AND ORDER

Petitioner, Samuel Eakman, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he seeks an order from this Court directing the Bureau of Prisons (the "BOP") to provide him with sentencing credit for time he spent erroneously at liberty. For the reasons set forth below, the Petition is granted.

### I.    Relevant Background

On October 30, 1998, Eakman pleaded guilty in the United States District Court for the Western District of Pennsylvania to two counts of conspiracy, one pertaining to the possession of anabolic steroids and the other charging money laundering. On September 9, 1999, the Honorable Gary L. Lancaster sentenced him to a term of imprisonment of 18 months, to be followed by three years of supervised release. Eakman appealed to the United States Court of Appeals for the Third Circuit and he was released pending his appeal. On July 10, 2000, the Third Circuit Court of Appeals vacated the sentence and remanded the case to the district court for resentencing.

On October 20, 2000, Judge Lancaster imposed a new imprisonment term of 366 days, and recommended to the BOP that "[t]his sentence should be served at a Community Corrections Center [("CCC")][1] with defendant being granted immediate work release status." (*Judgment*, attached to *Petition*, Docket No. 1, App. A). Eakman was ordered to surrender for service of the

---

[1] CCCs are more commonly known as halfway houses.

1

sentence "*as notified by the United States Marshal.*" (Id. (emphasis added)).

According to Respondent, the United States Marshals Service ("USMS") prepared a request for the BOP to designate Eakman's place of imprisonment, but it "inadvertently" failed to forward that request to the BOP. (See *Response*, Docket No. 15, at 3). Almost *two years* transpired before the USMS discovered its error. When it did, it belatedly forwarded the request for designation to the BOP. The BOP then designated Eakman to a CCC, and the USMS notified him that he was to report to the CCC on November 7, 2002.

Eakman reported to the CCC as directed and his federal sentence commenced. However, because the USMS' error delayed the commencement of his sentence, Eakman soon became subject to a (now invalid) BOP policy that went into effect in December 2002 regarding CCC placements.[2] Prior to that policy, the BOP would have permitted an inmate like Eakman to serve his entire 366-day sentence at a CCC, as he was doing. However, in December 2002, the BOP changed its policy and allowed designation to a CCC for only the last ten percent of an inmate's prison term, to be capped at six months. See, e.g., Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005). In addition, all CCC inmates who, as of December 16, 2002, had more than 150 days left to serve on their sentences were re-desiganted from CCCs to prisons. As a result of this policy change, the BOP notified Eakman in December 2002 that he would have to leave the CCC and report to the Federal Correctional Institution at Loretto, Pennsylvania, and continue service of his sentence there.

In January 2003, Eakman filed a motion to vacate his sentence under 28 U.S.C. § 2255. He asserted in his motion to vacate that the sentencing court would have imposed a different sentence had it known that the BOP would change its policy and would not permit him to serve his entire

---

[2] The BOP changed its policy in December 2002 because of a memorandum from the Department of Justice's Office of Legal Counsel. The BOP's December 2002 policy change, which became part of its 2005 regulations, was subject to much litigation. Several courts of appeals, including the Third Circuit Court of Appeals, found that it was invalid because it did not recognize the BOP's discretion to designate an inmate to a halfway house at any time, and therefore were contrary to the plain meaning of 18 U.S.C. § 3621(b). Woodall, 432 F.3d at 240 (citing Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004)).

2

sentence at the CCC.

Judge Lancaster denied the motion to vacate. He did grant Eakman's motion for bail pending appeal and on January 24, 2003, Eakman was released from BOP custody. On July 12, 2004, the Third Circuit Court of Appeals vacated Judge Lancaster's decision to deny the motion to vacate and remanded the matter for a hearing. United States v. Eakman, 378 F.3d 294 (3d Cir. 2004).

On November 22, 2004, Judge Lancaster entered an order denying Eakman's motion to vacate. He also granted a motion filed by Eakman postponing the execution of the remainder of his sentence until further order of court.

In September 2005, Eakman filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Docket No. 1). He asserted that the BOP's December 2002 policy change was unlawful. Eakman also contended that he was entitled to credit for time he erroneously spent at liberty as a result of the USMS' error. The case was assigned to Judge Lancaster as the habeas court and was referred to me.

On October 26, 2006, I issued a Report and Recommendation ("R&R") (Docket No. 18), in which I recommended that Eakman's challenge to the BOP's December 2002 policy regarding CCC placement be dismissed as moot because the Third Circuit Court of Appeals had invalidated that policy in Woodall v. Bureau of Prison, 432 F.3d 234 (3d Cir. 2005). I further recommended that Eakman's claim that he was entitled to credit for time spent at liberty be dismissed without prejudice because he had not exhausted his administrative remedies.

After I issued the R&R, Eakman filed a motion requesting that this case be stayed pending the forthcoming decision by the Third Circuit Court of Appeals in Vega v. United States, No. 05-5105, which he contended could be dispositive on the question of whether he should be awarded credit for time spent at liberty. Judge Lancaster vacated the R&R and granted Eakman's motion to stay.

On July 11, 2007, the Third Circuit Court of Appeals issued Vega v. United States, 493 F.3d 310 (3d Cir. 2007). The stay in this case was lifted, and the parties have filed additional memoranda in support of their respective positions. (See Docket Nos. 31-32, 37-38). In

3

accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

As of this date, Eakman has served 80 days of the 366-day sentence imposed on October 20, 2000. The only issue remaining before the Court is whether Vega entitles him to sentencing credit for the time he spent at liberty due to the USMS' error against his remaining term of incarceration.

## II. Legal Discussion

### A. Exhaustion

Before turning to the merits of Eakman's claim, I first must address Respondents' assertion that it should be dismissed for failure to exhaust. As noted above, I had previously recommended that it should be, but the R&R that contained that recommendation was vacated. After the stay in this case was lifted, the parties readdressed the exhaustion issue, and Eakman has argued persuasively that exhaustion is not required in this specific case.

28 U.S.C. § 2241 contains no statutory exhaustion requirement, but a federal inmate ordinarily is required to exhaust available administrative remedies prior to bringing a petition for writ of habeas corpus in federal court challenging the execution of his sentence. See, e.g., United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). Exhaustion promotes the following goals: (1) it allows the appropriate agency to develop a factual record and apply its expertise, which facilitates judicial review; (2) it permits agencies to grant the relief requested and conserves judicial resources; and (3) it provides agencies the opportunity to correct their own errors and fosters administrative autonomy. Muscato, 98 F.3d at 761-62 (citations omitted).

The law does not require exhaustion when these goals are not promoted, see Woodall, 432 F.3d at 239 n.2, and Eakman argues that that is the case here. Specifically, he contends that it would be futile for him to attempt to invoke the rule of credit for time spent at liberty through the administrative remedy process because it is not a rule that the BOP recognizes or applies. Rather, it is a rule that a court applies to address the negligence of ministerial officers, and as such it presents a legal issue that is more properly addressed by a court as opposed to the BOP in the first instance.

4

Moreover, if Eakman were forced to exhaust a futile administrative process, his sentence would likely expire, or be close to expiring, by the time he could have his claim heard in federal habeas.

I agree with Eakman that the purposes of exhaustion would not be served here by requiring him to exhaust his administrative remedies. Therefore, exhaustion is not required in this case. Id.; see also Woodall v. Federal Bureau of Prisons, 2005 WL 1705777 * 6 (D.N.J. July 20, 2005) (citing Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998)).

### B. Eakman Is Entitled To The Sentencing Credit He Seeks

In Vega, the Third Circuit Court of Appeals addressed what it acknowledged was an issue of first impression for it – whether it recognized the common law rule of credit for time erroneously spent at liberty. It held that it did, and it summarized the rule as follows: "[U]nder the common law, '[t]he government is not permitted to delay the expiration of [a prisoner's] sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him." Vega, 493 F.3d at 317 (quoting Dunne v. Keohane, 15 F.3d 335, 336 (7th Cir. 1994)).

The Third Circuit Court of Appeals then addressed the three competing interests that its application of the rule must address:

> Looking to the common law, we find that three interests are of paramount importance when determining whether an erroneously released prisoner should be granted credit for the time he was at liberty. The first is simple fairness toward the prisoner. As the Tenth Circuit stated in White [v. Pearlman, 42 F.2d 788 (10 Cir. 1930)]:
>
>> A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past.
>
> 42 F.2d at 789. In short, a prisoner has a right to serve his sentence continuously and in a timely manner, and to resettle after he has served his sentence without the fear that the government, at some undetermined point in the future, will reincarcerate him.
>
> In addition to affecting a prisoner's rights, allowing the delayed or interrupted service of a sentence grants the officers entrusted with the execution of sentences excessive power. As the Ninth Circuit pointed out in Smith v. Swope, 91 F.2d 260 (9th Cir. 1937)]:
>
>> If a ministerial officer, such as a marshal, charged with the duty to

5

> execute the court's orders, fails to carry out such orders, that failure cannot be charged up against the prisoner.... Any other holding would give the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. A prisoner sentenced for one year might thus be required to wait forty [years] under the shadow of his unserved sentence before it pleases the marshal to incarcerate him. Such authority is not even granted to courts of justice, let alone their ministerial officers.
>
> 91 F.2d at 262. As the sole entity responsible for execution of a prisoner's sentence, the government bears the burden of ensuring that the sentence is carried out in a timely manner, and there is an important policy consideration in encouraging that it does just that.
>
> However, as important as the rights of prisoners and the need to limit the capricious exercise of governmental power is the government's and society's interest in convicted criminals serving out their sentences. Artez v. Mulcrone, 673 F.2d 1169, 1171 (10th Cir. 1982) ("[S]ociety has a legitimate interest in ensuring that prisoners convicted of serious crimes not be released before serving their full sentences unless they are rehabilitated."). Therefore, any rule we articulate must be heedful of these three competing interests and ensure that all interested parties – the prisoner, government and society – share equally in the benefits and burdens of such a rule.

Id. at 318.

Next, the Third Circuit Court of Appeals set forth its test for determining whether a petitioner is entitled to credit for time he was erroneously at liberty, a test which it found takes appropriate consideration of the three aforementioned interests. Id. at 319. It held that once a habeas petitioner demonstrates that he was at liberty erroneously, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.[3] Id.

Eakman is entitled to the sentencing credit he seeks under the test articulated in Vega. He has shown that he was at liberty erroneously because the USMS failed to submit to the BOP a timely request for designation. See Interagency Agreement Between U.S. Department of Justice and U.S. Marshals Service, December 6, 1993, III. A.6 (the USMS "shall request designation from the BOP CCM for all sentenced prisoners...within 48 hours of a signed Judgment in Criminal

---

[3] The Third Circuit Court of Appeals noted that its test is similar to that used by the United States Court of Appeals for the Ninth Circuit, see, e.g., United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988), except that that court requires the petitioner to show negligence, whereas the test articulated in Vega shifts the burden of showing the absence of negligence onto the government. Vega, 493 F.3d at 319-20.

Court"). As a result of the USMS' mistake, the commencement of Eakman's sentence was delayed for approximately two years. As Eakman notes, had the USMS not erred, the BOP would have designated him to a CCC in a timely manner and he would have completed his 366-day sentence well before the now-invalid December 2002 BOP policy went into effect. Assuming that he would have abided by the CCC's rules and would not have committed any misconduct that would have warranted a transfer, he would have been able to serve his entire sentence at a CCC.

Under Vega, it is Respondents' burden to show that the government was not negligent or that Eakman was at liberty erroneously through his own efforts. 493 F.3d 319-20. They have not met their burden.[4] Respondents admit that the USMS erred in failing to request a designation and that this delayed the commencement of Eakman's sentence. (See *Response to Petition*, Docket No. 15, at 14 (conceding "ministerial error in failing to communicate a request for designation to the BOP."); Id. at 3 (characterizing error as "[i]nadverten[ce]"). And, Respondents concede that "the initial error in causing the delay in execution [of the sentence] cannot be attributed to [Eakman]." (Id. at 14).[5] Thus, Vega requires that Eakman be awarded credit for the period he was erroneously at liberty. By the Court's calculations, that would result in the determination that his term of imprisonment has been completed.

Respondents argue that the holding in Vega is limited to those prisoners who are challenging an interruption in their sentence (*i.e.*, claiming a violation of what is sometimes referred to as the "continuous service rule"), as opposed to those that are challenging the delayed commencement of their sentence (as Eakman is doing in this case).[6] (See *Additional Response*,

---

[4] Respondents argue that the USMS was not "grossly negligent" (*Additional Response*, Docket No. 31, at 5-6), but the Third Circuit Court in Vega noted that "even simple negligence" may suffice. 493 F.3d at 320 (citation omitted).

[5] Eakman lived at the same residence during the relevant time period and he was working at the same job. There is no evidence whatsoever that he attempted to flee or otherwise hinder issuance of any order to report for service of his sentence.

[6] Respondents also argue that this case is really about the BOP's calculation of Eakman's sentence under 18 U.S.C. § 3585 (which governs the date a sentence commences and whether an
(continued...)

7

Docket No. 31). To state it differently, Respondents contend that the rule applies if the government delayed the expiration of the sentence by negligently releasing the prisoner, but that it does *not apply* if it negligently failed to commence the sentence in the first place.

The Third Circuit Court of Appeals did not limit its holding in Vega in the manner Respondents suggest.[7] Its articulation of the common law formulation of the rule of credit for time spent at liberty supports this conclusion: "[U]nder the common law, '[t]he government is not permitted to delay the expiration of the sentence *either* by postponing the commencement of the sentence *or* by releasing the prisoner for a time and then reimprisoning him.'" Vega, 493 F.3d at 317 (emphasis added) (quoting Dunne, 15 F.3d at 336). Respondents have not convinced this court why it makes a difference conceptually that a petitioner was or was not in some form of custody before commencement of his delayed sentence. What is at issue is whether execution (and consequently the expiration) of the federal sentence was subject to delay and, if so, whether that delay was caused by the negligence of the imprisoning sovereign and not through any fault of the petitioner.

Finally, the three interests discussed in Vega are furthered by application of the rule of

---

[6](...continued)
inmate is entitled to prior-custody credit). The Court disagrees. At issue here is whether Eakman is entitled to credit under a common law rule, not whether the BOP properly calculated his sentence under the statute.

[7] In reviewing the law in other circuits, the Third Circuit Court of Appeals noted most courts "agree that a *mere delay* in the commencement of a sentence is insufficient to give a prisoner the right to credit for time at liberty." Vega, 493 F.3d at 315 (citing Leggett v. Flemming, 380 F.3d 233 (5th Cir. 2004)). However, in making this observation, the Third Circuit Court was not exempting those cases where there was a *delayed commencement of sentence due to government negligence* from its holding. Rather, it was contrasting other circuits' divergent formulations of the rule with its own comparative silence and explaining the need to "formulate a test which district judges may apply in resolving claims for credit for time at liberty when a prisoner has been erroneously released by one sovereign without having completed an obligation to a separate sovereign." Id. at 316 (the question is "what happens when a prisoner is not restrained, but should have been, because of governmental negligence."). Moreover, the Third Circuit Court of Appeals did not state that it was adopting a limitation based upon the distinction of the interruption of service of sentence as opposed to the delayed commencement of a sentence.

8

credit for time spent at liberty to this case. Simple fairness toward Eakman requires credit in the unusual circumstance presented by this case. "[A] prisoner has a right to serve his sentence continuously *and in a timely manner*, and to resettle after he has served his sentence without fear that the government, at some undetermined point in the future, will reincarcerate him." Id. at 318 (emphasis added). Service "in a timely manner" is what is at issue here. Eakman was resentenced on October 20, 2000. Had he been properly designated at that time he would have finished serving his sentence the following year. While awaiting designation, he continued to live at the same residence and work at the same job -- all the while with an outstanding federal sentence hanging over his head. When he was belatedly designated to a CCC in November 7, 2002, he surrendered to the CCC to begin service of his sentence, only to be informed a month later that due to a new BOP policy he would be transferred from the CCC to a prison. During the subsequent period of time in which he has challenged his sentence and the BOP's execution of it in federal court he has continued to work, has married, had a child, and remained crime free.

The decision here also takes into account the actions of the ministerial officers charged in obtaining a designation from the BOP. The USMS' error caused a two-year delay in the commencement of Eakman's sentence (which was only 366 days to begin with). And, society's interest in having convicted criminals serve out their sentences does not overshadow the other interests at stake here. Aside from the period of CCC confinement between November 7, 2002 and January 24, 2003, Eakman has been released from BOP custody. He has not committed any new offenses or acted in any way so as to jeopardize his release status during the years that have passed since his 1998 conviction. During the time that he has been released, he has held a steady job, has helped support his family, and has moved forward with his life in a law-abiding manner.

To be clear, the Court is not holding that in every case where there has been a delayed commencement of sentence that the common law rule of credit for time spent at liberty as articulated in Vega applies. However, the particular circumstances of this case warrant the application of the rule to Eakman's sentence. This ruling is limited to the specific facts of this case.

## III. ORDER

It is hereby Ordered that the petition for writ of habeas corpus is GRANTED and the Bureau of Prisons is directed to provide Eakman with the sentence credit that he seeks therein.

The Clerk of Courts is hereby directed to close this case.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: June 30, 2009